462 So.2d 166 (1985)
Sam BELL
v.
JET WHEEL BLAST, DIVISION OF ERVIN INDUSTRIES.
No. 83-CQ-2158.
Supreme Court of Louisiana.
January 14, 1985.
Rehearing Denied February 21, 1985.
*167 Orlando G. Bendana, Wayne H. Carlton, Jr., Bendana & Carlton, New Orleans, for plaintiff-appellee.
Kirstyne H. McCullough, Donald O. Collins, Jones, Walker, Waechter, Poitevent, Carrier & Denegre, New Orleans, for defendant-appellant.
Harriet R. Campbell Young, New Orleans, for intervenor-appellee.
DENNIS, Justice.
We are called upon to decide whether contributory negligence or comparative fault applies in strict products liability cases. This question of law was certified to us by the United States Court of Appeals for the Fifth Circuit, 717 F.2d 181 (1983), granting rehearing 709 F.2d 6 (1983), pursuant to La.R.S. 13:72.1 (1972) and Rule 12, Rules of the Supreme Court of Louisiana (1973). We accepted certification, 448 So.2d 109 (La.1984). After considering the oral and written arguments of the parties, we hold that contributory negligence does not apply in strict products liability cases, and that the principle of comparative fault may be applied in some products cases according to precepts formulated by analogy from the principle of Civil Code article 2323 and former article 2323, and other relevant social values, ethical principles and empirical data.
The court of appeals' statement of the facts of the case is as follows:
Sam Bell, the appellee, brought suit to recover injuries occasioned while employed at Vulcan Foundry. He was injured while working on a large shot blast machine used to clear large metal casings. This machine was manufactured and installed by appellant Jet Wheel Blast. Bell's injury occurred when his hand got caught in the chain and sprocket drive of the conveyor system of the machine.
The case was submitted to the jury on separate theories of strict liability and negligence on the part of appellant manufacturer-installer, Jet Wheel Blast. In response to interrogatories, the jury found that the product, the shot blast machine, was defective, that the defect was a proximate cause of the injury, and that Bell did not assume the risk of the injury. Under the negligence theory the jury found that Jet Wheel Blast was negligent, that the negligence was a proximate cause of the injury, but that Bell was guilty of contributory negligence.

*168 Jet Wheel Blast contended that the finding of contributory negligence exonerated it from liability because the finding constituted "victim-fault" under Louisiana law. The district court, however, awarded the full $150,000 damages to Bell on the strict liability claim. This panel in its original decision on appeal affirmed the judgment of the district court. 709 F.2d 6 (5th Cir.1983).
717 F.2d at 182 (5th Cir.1983).
The court of appeals vacated its original decision and certified this question:
"Does the Louisiana Civil Code permit the defense known as contributory negligence to be advanced to defeat or mitigate a claim of strict liability based upon a defective product, the theory of liability commonly known as `product liability?'"

I. Strict Products Liability Under Civil Code Article 2315
Articles 2315-24 of the Louisiana Civil Code comprise the code's entire chapter of legal principles regulating offenses and quasi-offenses.
The underlying principle is provided by Article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. * * *" The remaining articles describe some of the circumstances under which a person may be held liable for his act or that of a person or thing for which he is responsible. DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981); Loescher v. Parr, 324 So.2d 441 (La.1975). For the most part, however, because of the difficulty in finding fault for all times and purposes, the Code has left the function of defining fault in the hands of the courts. DeBattista v. Argonaut-Southwest Ins. Co., supra; Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971); See 2 Colin et Capitant, Cours elementaire de droit civil francois (8c Ed.1935) § 190.
In Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971) this court recognized a form of fault giving rise to a cause of action under Civil Code article 2315 based on strict products liability. In defining fault for this purpose we held:
A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect.
* * * * * *
If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know the vices in the things he makes, whether or not he has actual knowledge of them. Id. 250 So.2d at 755-756.
Under the terms of this strict products liability theory, in order to recover from a manufacturer or supplier the plaintiff must prove (1) that the injury or damage resulted from the condition of the product; (2) that the condition made the product unreasonably dangerous to normal use; and (3) that the condition existed at the time the product left the control of the manufacturer or supplier. Hebert v. Brazzel, 403 So.2d 1242 (La.1981); DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La. 1981); Hunt v. City Stores, 387 So.2d 585 (La.1980); Chappuis v. Sears, Roebuck & Co., 358 So.2d 926 (La.1978); Weber v. Fidelity & Casualty Ins. Co. of New York, 259 La. 599, 250 So.2d 754 (1971).
Although a strict products liability action was recognized over thirteen years ago by this court, the question of whether contributory negligence or comparative fault is applicable in such a case has not been definitively answered by us. In the absence of any guidance from this court, our *169 intermediate courts and panels of the federal court of appeals have reached varying conclusions. See Lovell v. Earl Grissmer Co., 422 So.2d 1344, 1352 (La.App. 1st Cir. 1982), writ denied, 427 So.2d 871. (La.1983) (contributory negligence bars recovery in strict product liability cases); Tri-State Ins. Co. v. Fidelity & Casualty Ins. Co., 364 So.2d 657, 661 (La.App. 2d Cir.1978), writ denied, 365 So.2d 248 (La.1978) (victim fault, measured by elements of assumption of risk, bars recovery in a products liability case); Lewis v. Timco, Inc., 716 F.2d 1425 (5th Cir.1983) (on rehearing en banc) (recognition of comparative fault in maritime products liability will not "frustrate" a dedicated state policy); see also Lewis v. Timco, Inc., 697 F.2d 1252 (5th Cir.1983) and 736 F.2d 163 (5th Cir.1984); LeBouef v. Goodyear Tire & Rubber Co., 623 F.2d 985, 991 (5th Cir.1980) (contributory negligence is not a defense to a strict products liability claim under Louisiana law); Khoder v. AMF, Inc., 539 F.2d 1078, 1079-81 (5th Cir.1976) (a jury charge which included contributory negligence as a defense to product liability was improper under Louisiana law).

II. Statutes Pertaining to Contributory and Comparative Negligence
Article 2303 of the Civil of Code of 1825 was one of the first mandates in legal history establishing for general use what is now known as the doctrine of comparative negligence. Malone, Comparative NegligenceLouisiana's Forgotten Heritage, 6 La.L.Rev. 125, 129 (1945). It had no counterpart in the Code Napoleon or in the earlier Louisiana Civil Code of 1808. It read as follows:
"The damage caused is not always estimated at the exact value of the thing destroyed or injured; it may be reduced according to circumstances, if the owner of the thing has exposed it imprudently."
The provision was readopted as article 2323 of the present Civil Code of 1870 and persisted unmodified until its amendment by Act No. 431 of 1979.
Paradoxically, this court ignored the provision and let it fall into oblivion, while relying in negligence cases on common law precedents to apply the doctrine of contributory negligence, for which there was no codal authority. Fleytas v. Pontchartrain Railroad Co., 18 La. 339 (1841); Malone, supra; Comment, 11 Tul.L.Rev. 112 (1935). Professor Malone has noted many of the factors which probably were responsible for these developments: The first decision that clearly committed this court to contributory negligence was decided in 1841. Fleytas, supra. At that time there was no organized body of civilian doctrine on the issue of comparative fault. It was not until much later that comparative fault became openly acknowledged as the universal attitude in civil law jurisdictions. Since article 2323 had no counterpart in the Code Napoleon, it was not expounded by the French commentators. Moreover, because the article was elliptically couched in terms of damages rather than substantive principle, a sharp and arresting focus was not brought to bear upon it. In contrast to the absence of definitive French authority to uphold comparative fault, there was a comprehensive body of Anglo-American cases and texts supporting contributory negligence doctrine. Contributory negligence was perpetuated because it made the judging process seem simpler and more impersonal and at one time afforded a ready means for control of juries. At the same time it enabled the courts to assume the role of conservative policymakers without betraying even to themselves their role of judicial lawmaking. Malone, supra p. 133-140.
In 1979 the legislature reintroduced the concept of comparative negligence by rewriting article 2323 in clear, unmistakable terms of substantive principle, as follows:
"When contributory negligence is applicable to a claim for damages, its effects shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages recoverable shall be reduced in proportion to *170 the degree or percentage of negligence attributable to the person suffering the injury, death or loss." (Amended by Acts 1979, No. 431 § 1, eff. Aug. 1, 1980).
Consequently, a plaintiff's claim for damages no longer can be barred totally because of his negligence. At most his claim may be reduced in proportion to his fault. Thus, the net effect of article 2323, as amended, is to prevent the courts from applying any defense more injurious to a damage claim than comparative negligence. The article does not, however, state when the courts shall permit a defense of contributory or comparative negligence to affect a plaintiff's recovery, nor does it prohibit the courts from applying comparative negligence to a claim previously insusceptible to the bar of contributory negligence.
Accordingly, we conclude that neither the statutes nor the previous decisions of this court precisely and expressly determine whether a defense of contributory negligence or comparative fault is applicable to a strict products liability claim. It is necessary, therefore, that we proceed with a search for the rule that will provide an answer to the question.

III. Whether Contributory Negligence or Comparative Fault Applies in a Strict Products Liability Case
When new or doubtful cases arise, a court in a code system performs an extensive examination and interpretation of the code provisions to see if there is a precise rule intended by the legislator to govern the case. If there is such a rule, it is binding on the court. When a court is unable to find in the legislator's intention a precise rule to govern the case, it must conduct an objective search for a rule. These instances of objective search for a rule may involve looking for an analogy among codal rules, principles, concepts or statutory doctrines; and it may entail a broader inquiry extending beyond the legal system to include also relevant empirical data, ethical principles and social values. The court's purpose in an objective search is to discover a rule which will satisfy, as well as possible, justice and social usefulness in the case at hand and in similar cases. Even if the legislature has tacitly authorized the courts to update the statute by including as one of its elements a dynamic concept, such as "fault" or "public policy", the search for a subsidiary rule more specifically defining the dynamic concept must be objective. The court must eliminate any personal influence or influence related to the specific case and base its decision on objective elements; it should take into account all of the social, moral, economic and other considerations that an objective rulemaker would consider in forming a rule to govern the case. Geny, Methode d' Interpretation Et Sources En Droit Prive' Positif §§ 155, 156 (Trans. Louisiana State Law Institute 1954); Cardozo, The Nature of the Judicial Process (1921); Cueto-Rua, Judicial Methods of Interpretation of the Law, 80-81 (footnotes omitted), copyright by the Paul M. Hebert Law Center Publications Institute (1981); Entrevia v. Hood, 427 So.2d 1146 (La. 1983); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971).
Because the Civil Code contains no precise rule intended by the legislature to govern modern products injury cases, our rule defining fault for purposes of strict products liability was formulated pursuant to such an objective search. The rule imposes liability for fault which does not encompass negligence, in a manner analogous to Civil Code articles 666, 667, 668, 670 and 2322 and articles 2318-2322. Without requiring negligence by him who is to respond in damages, some of these articles impose liability for constructions, others for activities, still others by reason of relationships. See Langlois v. Allied Chemical Corporation, supra 258 La. at p. 1083, 249 So.2d 133. Our products liability rule is consistent with the Code's underlying reasons for imposing a legal obligation when a quasi-offense causes damage to another: there is always, either in the person of the creditor or in his patrimony, a circumstance which renders such creation necessary, and such circumstance is nothing other than the unjust injury which must be avoided, if it has *171 not yet occurred, or to repair it, if it has already happened. See 2 Planiol nos. 806, 807.
As were most American courts, we were influenced in our objective search for a products liability rule by the doctrine that culminated in the adoption of Section 402A of the Restatement Second of the Law of Torts, which has received a wide national acceptance. The basic goals of the strict products liability doctrine appear to be: (a) the reduction of the incidence of injuries by providing an incentive for manufacturers to produce safer products; (b) the placing of the burden of accidental injuries caused by defective products on those who market them, to be treated as a cost of production against which liability insurance can be obtained. See Prosser, The Assault on the Citadel, 69 Yale L.J. 1099, 1119-22 (1960); Restatement Second of Torts § 402A, comment C (1965). Recognizing that these goals are similar to the underlying reasons for delictual responsibility imposed by the Civil Code, and relying on a search among empirical, ethical and legal considerations, which confirmed the need for a strict products liability rule in our state, this court formulated a rule similar to Restatement Section 402A for resolving products liability disputes that is designed to be conducive to justice and social utility, consistent with Civil Code principles, and analogous to other definitions of fault formulated pursuant to Civil Code article 2315.
Using the same approach to formulate rules for defenses to strict products liability, we conclude that the defense of contributory negligence as a complete bar to recovery should be rejected entirely, and that comparative fault may be applied in certain categories of cases to reduce the plaintiff's recovery.
Contributory negligence as a complete bar to recovery does not apply in products liability cases because it is incompatible with that doctrine. The contributory negligence defense would permit the manufacturer to breach his duty to manufacture a reasonably safe product and escape liability simply because the fault of the user of the defective product contributed to the accident. Thus, in many instances the manufacturer would have no incentive to make and market a safer product, and the user who is usually less able to distribute the loss would be forced to absorb even the portion of the damages attributable to the unreasonably dangerous condition of the manufacturer's product. Contributory negligence has never been part of our legislated law and is now expressly prohibited by statute. Civil Code article 2323 (as amended by 1979 La.Acts, No. 431, § 1). The vast majority of the other state courts which have adopted the strict products liability doctrine do not permit the defense of ordinary contributory negligence to bar recovery. Union Supply Co. v. Pust, 196 Colo. 162, 583 P.2d 276 (1978); Shields v. Morton Chem. Co., 95 Idaho 674, 518 P.2d 857 (1974); Henderson v. Ford Motor Co., 519 S.W.2d 87 (Tex.1974); Findlay v. Copeland Lumber Co., 265 Or. 300, 509 P.2d 28 (1973); Devaney v. Sarno, 125 N.J.Super. 414, 311 A.2d 208 (1973); Luque v. McLean, 8 Cal.3d 136, 104 Cal.Rptr. 443, 501 P.2d 1163 (1972); Williams v. Ford Motor Co., 454 S.W.2d 611 (Mo.App.1970); Williams v. Brown Mfg. Co., 45 Ill.2d 418, 261 N.E.2d 305 (1970); O.S. Stapley Co. v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968). Contra, Hoelter v. Mohawk Service, Inc., 170 Conn. 495, 365 A.2d 1064 (1976); Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 386 A.2d 816 (1978) overruled by Suter v. San Angelo Foundry and Machine Company, 81 N.J. 150, 406 A.2d 140 (1979).
On the other hand, pure comparative fault principles would seem to coincide with and further the goals of products liability doctrine in some cases. Where the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those types of cases in which it *172 does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safer product.
Comparative fault may not be applied to reduce a claim for damages in a case such as the present one giving rise to the certified question. The plaintiff was injured while performing a repetitive operation with a defective industrial machine as required by his employer. His hand got caught in the chain and sprocket drive of the conveyor system of the machine because of the lack of an adequate guard at the particular place on the drive that the injury occurred. His ordinary contributory negligence in combination with the machine's defect caused the accident and injury. Under these circumstances, the application of comparative fault would not serve to provide any greater incentive to an employee to guard against momentary neglect or inattention so as to prevent his hand from being mangled by machinery. Reduction of the plaintiff's award in this type of case would only tend to defeat the basic goals of strict products liability doctrine by reducing economic incentive for product quality control and by forcing the injured individual to underwrite a loss himself which could be more efficiently distributed by the manufacturer through insurance and price adjustments. Cf. Suter v. San Angelo Foundry and Machine Co., 81 N.J. 150, 406 A.2d 140 (1979) ("The imposition of a duty on the manufacturer to make the machine safe to operate whether by installing a guard or ... by making it inoperable without a guard, means that the law does not accept the employee's ability to take care of himself as an adequate safeguard of interests which society seeks to protect." 406 A.2d at 148); Bexiga v. Havir Manufacturing Corp., 60 N.J. 402, 290 A.2d 281 (1972) ("The asserted negligence of plaintiff... was the very eventuality the safety devices were designed to guard against." 290 A.2d at 286).[*]
In those types of cases in which comparative fault principles may be applied, the principles of article 2323 and its predecessors should be applied by analogy so that the claim for damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss. Thus, the "pure" form of comparative negligence shall apply in those strict products liability cases in which the plaintiff's award may be reduced. Furthermore, the adoption of a system of comparative fault should, where it applies, entail the merger of the defenses of misuse and assumption of risk into the general scheme of assessment of liability in proportion to fault.
Our decision is intended as an answer to the certified question and as a first step in the formulation of a just and socially useful rule, not as an answer to all questions that may be expected to arise. For example, the question of whether other classes of cases fall within the category to which comparative fault may apply must be decided on a case-by-case basis. Pending future judicial or legislative developments, we are content for the present to assume the position taken by the California court which scrupulously abstained from issuing a detailed guidebook to the new area of comparative negligence, preferring to adopt the view "`that ... the trial judges of this State are capable of applying [a] comparative negligence rule without our setting guidelines in anticipation of expected problems. The problems are more appropriately resolved at the trial level in a practical manner instead of a theoretical solution at *173 appellate level. The trial judges are granted broad discretion in adopting such procedure as may accomplish the objectives and purposes expressed in this opinion.'" Daly v. General Motors Corp., 20 Cal.3d 725, 144 Cal.Rptr. 380, 390, 575 P.2d 1162, 1172 (1978).

Conclusion
Contributory negligence does not apply in strict products liability cases. The principle of comparative fault may be applied in some products cases according to precepts formulated by analogy to the principle of Civil Code article 2323. The principle does not apply, however, and the plaintiff's recovery cannot be diminished in a case such as the present one involving an industrial accident resulting in injury to an employee's hand due to defective machinery and the employee's ordinary contributory negligence. Under these circumstances the application of comparative fault would tend to defeat the basic goals of strict products liability without providing any additional incentive for careful product use.
CERTIFIED QUESTION ANSWERED.
WATSON, J., concurs and assigns reasons.
DIXON, C.J., subscribes to the opinion and concurs in part.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
WATSON, Justice, concurring.
The majority slightly misstates the issue by observing that "we are called upon to decide whether contributory negligence or comparative fault applies in strict products liability cases."
The exact question certified is as follows:
"Does the Louisiana Civil Code permit the defense known as contributory negligence to be advanced to defeat or mitigate a claim of strict liability based upon a defective product, the theory of liability commonly known as `product liability?'"
The answer to this question is probably best stated as "yes, no, sometimes, and maybe." The question certified is, with due respect to our federal brothers, somewhat ambiguous. Contributory negligence has always been regarded as a finding which defeats the claim of a plaintiff. On the other hand, comparative negligence (and not contributory negligence) is used to mitigate a claim. At the time of the injury in question, it appears that the doctrine of contributory negligence and not comparative negligence was in effect in Louisiana.
Therefore, the proper question from the federal circuit would be whether contributory negligence could defeat the products liability claim under the described circumstances. Like the majority, I would respond in the negative relying on such cases as Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4 Cir.1970); and O'Keefe v. Warner, 288 So.2d 911 (La.App. 1 Cir.1973). An employee who is at his proper post of employment using machinery furnished by the employer is not ordinarily guilty of contributory negligence because he has no choice other than to work or quit, the latter an unrealistic possibility in the current economy. Since an employee who is required to work daily with defective machinery will often sustain an injury, a manufacturer who invites such an injury by failure to provide a basic safety device is responsible. An employee's one act of carelessness will not defeat his recovery, because the employee has not been guilty of fault or blameworthiness which would equate with contributory negligence. See Lewis v. Timco, Inc., after remand, 736 F.2d 163 (5th Cir.1984).
The other facet of the certified question seems to be whether comparative negligence applies generally to product liability cases. The majority has taken the position that the answer may vary from case-to-case. An approach which has merit would be to allow victim fault to be advanced as a defense in any case considered under the regime of comparative negligence with appropriate instruction to the jury or appropriate application of certain legal principles in a bench trial. Why not allow the trier of fact to consider the possibility of victim fault to mitigate damages in all tort cases?
*174 To say that each case must be decided on a case-by-case basis as to whether comparative negligence is even possible fails to give guidance to litigants, attorneys or the other courts of the state.
Therefore, with these reservations I respectfully concur.
DIXON, Chief Justice (concurring).
I respectfully concur, holding reservations about Part II of the majority opinion; otherwise, I subscribe to the opinion. C.C. 2323 was probably what it appeared to be before the 1979 amendmentan explanation of the "damage" for which an owner of a building may be liable under C.C. 2322, and related to the assessment of damages for offenses and quasi offenses mentioned in C.C. 1934.
C.C. 2323 (before its amendment) is available for use by analogy to comparative negligence, but hardly more.
MARCUS, Justice (dissenting).
I disagree with the majority that the defense of contributory negligence does not apply in strict products liability cases. The majority disregards the language in Weber v. Fidelity & Casualty Insurance Co. of New York, 259 La. 599, 250 So.2d 754 (1971), which states that "[a] manufacturer of a product which involves a risk of injury to the user is liable to every person... who without fault on his part, sustains an injury caused by a defect in design...." (Emphasis added.)
I decline to depart from the well-established jurisprudence of this state that has recognized the doctrine of contributory negligence, and further disagree with the majority's contention that comparative fault existed in Louisiana prior to the amendment to La.Civ.Code art. 2323 which did not become effective until August 1, 1980. Because the accident in this case occurred before that date, a finding that plaintiff was contributorily negligent bars his recovery. Moreover, even if this accident had occurred after comparative negligence came into effect, plaintiff's recovery would be reduced to the extent of his fault, since the proportionate fault of both plaintiff and defendant is to be assessed in all tort cases arising under comparative negligence.
Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
It would be a simple matter to apply comparative negligence in all cases where the fault of both parties contributes the injury, whether under Civil Code Article 2315 or Article 2317 or any other conceivable theory of liability. Instead, the majority complicates the legislative effort to do justice between litigants by deciding in a products liability case that comparative negligence will be applied where "the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully without exacting an inordinate sacrifice of other interests" and never "where it drastically reduces the manufacturer's incentive to make a safer product."
In the present case, where a man was injured while working with his hands on a defective machine for another's profit, it would be an easier task for this writer, considering these facts and circumstances together with the employee's simple inadvertedness to assess the manufacturer with anywhere from 95 to 99% of the fault and the injured worker with the remainder. This small reduction would require the plaintiff to be responsible for his fault while the manufacturer would also be penalized sufficiently to force him to produce a safer product. Thus, it is this writer's opinion that the bench and bar would be better served if the doctrine of comparative negligence would be applied uniformly.
Finally, I would not have overruled 150 years of jurisprudence with this lame duck certification case and agree with Justice Marcus that comparative fault did not exist in Louisiana until the amendment to Civil Code Article 2323 which took effect August 1, 1980.
NOTES
[*] Of course, the exception outlined above does not include an employee who deliberately injures himself.

There may be other instances where the ordinary contributory negligence of the plaintiff will not result in a reduction of his recovery. For example, Florida and Illinois apply comparative negligence principles to strict product liability, but neither state allows a plaintiff's failure to discover or guard against a defect to be compared as a damage-reducing factor. West v. Caterpillar Tractor Co., Inc., 336 So.2d 80, 90 (Fla.1976); Coney v. J.L.G. Industries, Inc., 97 Ill.2d 104, 73 Ill.Dec. 337, 344, 454 N.E.2d 197, 204 (1983).