HUFFT and GULOTTA, Justices,
dissent for the following reasons:
Caterpillar Tractor Co., defendant-appellant, appeals the jury’s decision that found it strictly liable as the manufacturer of a forklift which crushed Mr. William Ingram to death and the award of damages. For the reasons given below, we respectfully dissent from the majority’s reversal of the jury’s decision.
On September 27, 1980, William Ingram, an employee of Kaiser Aluminum & Chemical Corporation, was operating a Caterpillar industrial tractor (forklift) in connection with his normal duties at the plant. While transporting a 900 pound coil of wire, Ingram negotiated the forklift down an incline. The machine's left front tire traversed a mound of cement surrounding a metal sign post. When Ingram looked back to see what had happened, the ma *747 chine’s left rear tire rolled up the cement mound. These traversals upset the lateral stability of the machine. The forklift with a load on the forks began to turn over at which time Ingram instinctively attempted to jump to the left toward the pole. However, the force of the fall threw him to the right. He fell to the ground before the lift. The forklift’s metal overhead protective device pinned his body to the ground and crushed him to death. Among other injuries, Mr. Ingram suffered a ripped lung and a crushed spine. Plaintiffs showed that Mr. Ingram would not have been killed or seriously injured had he been wearing a seat belt, or some type of adequate occupant restraint. Plaintiffs also showed that the manufacturer anticipated lateral overturns and knew of their consequences (certain death or serious injury) but did not provide any type of restraining device nor warn, in any way, the operator of the forklift how to react in such a situation.
Suit was filed by Ingram’s widow, Linda Ingram, individually and on behalf of her two minor children, against Caterpillar Tractor Company (the parent corporation of the manufacturer of the lift) and Boyce Machinery Corporation (the vendor of the lift). The trial court dismissed the action against Boyce upon motion made after the plaintiffs rested their case. Kaiser Aluminum & Chemical Corporation had filed an intervention to recover worker’s compensation benefits paid to plaintiffs in the sum of $51,531.00. The trial court granted Kaiser the right to recover such amount from the total awarded plaintiffs pursuant to stipulation.
The relevant facts of this case are simple. Forklifts vary in size, width and capacity; some have combustion engines, while others have electric engines. Forklifts are commonly used for lifting, carrying, and loading heavy objects in warehouses and onto trains, tractor-trailers, ships, etc. They are operated in both forward and reverse. They have a narrow wheel base to enable them to operate in small aisles or other restricted areas of limited space. The front lift mechanism of the forklift obscures the operator’s forward vision, particularly when carrying certain types of loads. Forklifts not only have narrow wheel bases susceptible to instability but also have a changing center of gravity as the load is raised or lowered which further lessens stability. Lateral stability lessens as the load increases and the higher it is raised. As a result of the narrow wheel base of a forklift, its changing center of gravity, and the obstruction of the operator’s vision, it is susceptible to lateral overturn. This can happen in a variety of ways. A machine can be struck by another vehicle, the operator can turn too sharply, the operator can drive over a depression or obstacle in the roadway. The problem of lateral overturns may not be effectively diminished by re-design of the forklift because an increase in the width of the lifts that would provide improved stability would make them more difficult for or incapable of entering into the narrow passageways of trains, tractor-trailer trucks and warehouse aisles. Even if forklifts were made wider and a little more stable, the risk of lateral overturn would still exist while the forklift is travelling up and down a loading ramp. Vision obstruction would still exist. Given the driver’s inability to have a clear range of vision and the narrowness of the wheel base, lateral upsets are a foreseeable type of accident for this particular type of equipment. Forklift manufacturers know, and specifically, Caterpillar was aware, that one out of every four forklift accidents involves a lateral overturn. Approximately 450 to 500 lateral overturn accidents occur in a year. Caterpillar also knows that death or serious injury may be an all too common result from a lateral overturn.
The force of gravity has a great deal to do with these deaths or serious injuries. As the machine begins to tip over, gravity pulls the top of the machine toward the earth; the fall is restrained because part of the forklift is still in contact with the earth. This causes resistance and reduces the rate of descent. The operator, who is either thrown free or instinctively attempts to jump, free-falls (which fall is faster than the machine’s), and, in such instances, hits the ground before the forklift completes its *748 lateral overturn. Consequently, the operator is crushed underneath when the machine falls on him.
This is precisely what happened to William Ingram. While operating his forklift in a forward position, with a load on the forks, the front left tire of his lift rolled over an uneven area of concrete and thereafter the lift’s left rear wheel grazed the metal sign pole and overturned toward the operator’s right. Mr. Ingram attempted to jump to the left but he fell to the right and hit the ground before the forklift completed its roll. The forklift’s metal overhead protective guard fell on him and crushed him to death. Though the forklift had no ■ mechanical deficiencies, that is, the brakes worked, the steering worked, etc., the manufacturer of the lift may be held strictly liable for damages under either one of two theories of recovery. In the event of a lateral overturn, (i) the occupant faces death or serious injury because of the absence of protective devices either to prevent or absorb the shock of his fall, and (ii) the manufacturer has not provided any warning for the user concerning the measures he must take in order to save himself from death or serious harm.
The appellant presents the following issues on appeal:
1. Whether there is competent evidence of record to support the jury’s finding that the forklift in question was defectively designed..
2. Whether the verdict of the jury should be reversed because of the improper appeal of plaintiffs’ counsel to sympathy, passion, and prejudice.
3. Whether the verdict of the jury should be reversed and the case remanded for a new trial because of the trial court’s improperly compelling testimony concerning unrelated forklift accidents.
4. Whether the verdict of the jury should be reversed and this case remanded for a new trial because of the trial court’s improperly allowing the jury to consider evidence of post-accident design change.
5. Whether the verdict of the jury should be reversed and this case remanded for a new trial because of the trial court’s erroneous instruction to the jury regarding comparative negligence.
6. Whether the amount of damages awarded by the jury was supported by the evidence introduced at trial.
Our review of the record before us must be conducted in accordance with the principles set forth in Arceneaux v. Dominque, 365 So.2d 1330, 1333 (La., 1978), where the Louisiana Supreme Court held that the appellate court should not disturb a finding of fact unless it is clearly wrong. The appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong.
The record and briefs before us present an abundance of facts, opinions and arguments, but the fundamental fact before us is that Mr. William Ingram faced certain death or serious injury in the event that his forklift sustained a lateral overturn. The manufacturer provided no protective device nor did so little as to warn Mr. Ingram of such condition and how to react under such circumstance. Mr. Ingram’s forklift did sustain a lateral turnover which killed him.
The evidence presented to the jury supports the jury's decision to the effect that the forklift had a design defect by reason of its inherent instability and the lack of a restraining device. The defendant Caterpillar Machinery Corporation, through its own representative and expert witness, Mr. Lajeunesse, admitted that approximately 450-500 lateral overturn accidents occur each year. In every one of these accidents, the operator faces certain death or serious injury unless he knows before hand what to do or he just reacts in the correct way by chance.
The defendant has attempted to demonstrate that the particular model of forklift (Caterpillar M-80) operated by Mr. Ingram and which crushed him to death must be *749 distinguished from all other forklifts because its base is much more stable than others due to the heavy batteries which provide its energy source. While the Caterpillar M-80 might not tip over until exceeding a lateral tilt of 62.9%, once turnover commences, the operator has approximately 1½ seconds not to think but to react. If he reacts incorrectly, he either dies or sustains serious injury.
Caterpillar presented to the jury and reasserts to us the argument that the operator of a forklift falling in a lateral overturn may reasonably protect himself by staying in the cab, holding on, and leaning in the direction opposite to the fall. Caterpillar, as a matter of practice, does not inform the purchasers or the ultimate operators, either formally or informally, what action must be taken in order to prevent death or serious injury in the event of a lateral overturn. The operator who experiences a lateral overturn must in an instant think through concerning what he must do, on his own, without any advance warning, all while he is fighting against gravity that is pulling him down and toward the direction that the outside force is headed and against his natural instinct to jump with and in the direction that the outside force is headed. The operator’s mind must contend with all these factors within a period of approximately lVfe seconds. The operator has no time to think but only to react. The operator is left to fend for himself without the assistance of a restraining device. He must react without previous warning that he must not jump and that he must hold on in order to avoid death or serious injury. The assertion of such a defense no doubt struck the jurors as a defense without merit.
Louisiana law recognizes that a manufacturer of a product may be held strictly liable for damages occasioned by the risk of injury presented by owning or using the product. Weber v. Fidelity & Casualty Insurance Company, 259 La. 599, 250 So.2d 754 (1971). The Louisiana Supreme Court has summarized in Bell v. Jet Wheel Blast, Div. of Ervin, Ind., 462 So.2d 166 (La., 1985), the requirements of prior case law that the plaintiff must show in order to meet his burden of proof as to a manufacturer’s strict liability:
“The plaintiff must prove (1) that the injury or damage resulted from the condition of the product; (2) that the condition made the product unreasonably dangerous to normal use; and, (3) that the condition existed at the time the product left the control of the manufacturer or supplier.” Jet Wheel Blast, supra, at 168.
In the instant case, the jury’s verdict rests upon the conclusion that the injury occurred as a result of the inherent instability of the forklift and the absence of an adequate restraining device. The Caterpillar M-80, while more stable than other forklifts due to its heavy base, is susceptible to a lateral overturn and lacks any type of restraining device. These two conditions resulted in the injury (Requirement 1). These conditions clearly existed when the Caterpillar M-80 forklift operated by Mr. Ingram left the control of the manufacturer (Requirement 3).
The remaining issue to address is whether these conditions are unreasonably dangerous to normal use (Requirement 2). In the case of a forklift, the term “normal use” must be understood by reference to the normal uses of a forklift. The actual conditions under which Mr. Ingram operated his forklift — rough concrete around a metal pole at the base of a ramp — do not suggest pristine conditions in which a forklift might be operated without incident but actual work conditions around a warehouse and work yard. The manufacturer should reasonably expect, if not actually know, that forklifts would be, must be, operated in less than ideal conditions. The applicable conditions appear normal to the use of the forklift. The manufacturer knows or should know that such conditions suggest a substantial risk of lateral overturn. The manufacturer knows that certain deaths and serious injuries shall occur from lateral overturns unless protective devices prevent the operator from falling out or the operator reacts by holding on. If the product is proven defective by reason of the risk of hazard presented by normal use, the plain *750 tiff need not prove any particular negligence by the manufacturer or processor; the manufacturer is presumed to know the vices in the things he makes, whether or not he has actual knowledge of them. Jet Wheel Blast, supra, at 168.
Caterpillar has taken the position that the operator’s instinctive reaction shall be the sole protection afforded the operator. Caterpillar does not provide any restraining device nor does it provide any type of warning as to how the operator should react. By satisfying all the requirements set forth in Jet Wheel Blast, supra, the plaintiffs might have overcome a burden of proof to the jury greater than necessary. Under the holding of Chappuis v. Sears, Roebuck & Company, 358 So.2d 926 (La., 1978), the showing of unreasonably dangerous to normal use (susceptibility to lateral overturn) pretermits the necessity for proving a defect in design or manufacture. The manufacturer has a duty to warn of any danger inherent in the normal use of its product under such a circumstance. Chappuis, supra; and Andries v. General Motors Corp., 444 So.2d 1180 (La., 1983). To warn against doing certain things that would result in a lateral overturn does not suffice. The operator does not have total control of the lift at all times: outside forces and obscured hazards might initiate a lateral overturn. The manufacturer has a duty to warn the operator as to what happens in a lateral overturn and what the operator must do in order to survive.
When the facts of the record before us are applied to the foregoing legal principles and analysis, we cannot find the jury’s verdict clearly wrong. The jury considered the evidence presented including several expert’s opinions. The jury determined that Mr. Ingram’s death resulted from a defective condition in the forklift manufactured by Caterpillar, that the defective condition made the Caterpillar forklift unreasonably dangerous to normal use, and that the defective condition existed when the forklift left the control of Caterpillar. The jury also found that Mr. Ingram did not commit any negligence which contributed to his injuries. A review of the record as required under Arceneaux- v. Dominque, supra, shows that the jury’s verdict was not clearly wrong.
We have considered the other issues raised by the defendant but find no merit in them. Considered on the whole, the conduct of the plaintiffs’ counsel did not constitute that which would necessitate reversal or remand. Similarly, we find no merit in the defendant’s argument that the trial court improperly allowed testimony concerning unrelated forklift accidents and post-accident design changes. The direct evidence presented by the defense was so broad and sweeping that the plaintiffs’ evidence complained of was properly admissa-ble for purposes of impeaching the evidence the defendant presented. In order to allow the jury to assess the relative stability of the Caterpillar M-80, the trial judge properly allowed introduction of evidence concerning the design of other forklifts, particularly pértaining to susceptibility to lateral overturns.
We do not find any error in the trial court’s instruction to the jury concerning application of the doctrine of comparative negligence. Under the holding of Jet Wheel Blast, supra, comparative negligence does not operate as a bar to recovery from a manufacturer who is otherwise held strictly liable; the doctrine applies to reduce the amount of the damages awarded subject to the exception that the doctrine does not apply at all when the applicable injury results from a repetitive industrial task. Prom the record presented, the jury may have concluded that Mr. Ingram performed a repetitive industrial task that resulted in his death due to the forklift’s susceptibility to overturn laterally under certain conditions and the manufacturer’s failure to protect him or to even warn him of such a possibility and what he must do to protect himself. Even if Mr. Ingram did not perform a repetitive industrial task, the record would support the jury’s finding of no contributory negligence. Any negligence by Mr. Ingram had to be a proximate cause of his injury. The proximate cause of the injury was not the overturn of the forklift but, rather, the absence of a re *751 straining device or even a warning to Mr. Ingram as to how he should have reacted.
Finally, the record establishes that the plaintiffs presented evidence concerning the damages sustained. The defendant did not controvert these amounts at trial but seeks to have these set aside or reduced at the appellate level. In order to do so, we must find an abuse of the much discretion allowed a jury under La.C.C. art. 1999. Reck v. Stevens, 373 So.2d 498 (La., 1979). We do not find an abuse of such discretion.
For the reasons stated above, we dissent from the majority’s reversal of the jury’s decision which found Caterpillar Machinery Co. strictly liable for damages because the machine had a design defect and also because the manufacturer failed to warn the victim.