DENNIS, Circuit Judge,
dissenting:
I respectfully dissent. The undisputed, concrete facts of this fully tried case show that the damage to the claimant, Jerry Matthews, arose from his own use of the rifle to shoot at a target, a use that an objective rifle manufacturer should reasonably expect of an ordinary person in the same or similar circumstances as Matthews’. Matthews did not allege or attempt to show that his damage arose from the use of the rifle by another person or entity. Thus, both the district court and the majority of this panel erred in misinterpreting and misapplying the Louisiana Products Liability Act (LPLA or “the Act”) as if it required Matthews to show *649 that his damage arose from a reasonably expected use of the riñe by another person or entity. The LPLA does not place such an additional and greater burden upon a claimant at the threshold reasonably-anticipated-use stage of a products liability case. Therefore, their dismissal of Matthews’ claim on the ground that he failed to demonstrate that his damages arose from his reasonably anticipated use of the rifle was legal error. It may be that Matthews’ case ultimately might have failed on the merits of his design and warning claims, but under the LPLA he should not have been poured out of court at the threshold reasonably-anticipated-use stage, because he obviously used the rifle as a manufacturer should reasonably have anticipated, and did not use the rifle in an irrational or abnormal way.
I.
Matthews was severely injured by the backward explosion of the Remington rifle as he tried to fire it at a target. This model of Remington rifle has a dangerous characteristic that Remington did not warn users about either in the owners’ manual or on the rifle itself, viz., when the pin holding its two-piece bolt assembly together is missing or defective, the rifle can explode in the face of a shooter, although its bolt assembly may appear to be working properly when a user inserts a rifle shell and prepares to pull the trigger.[1] Matthews was justifiably not aware of this dangerous characteristic of this model of Remington rifle; and he was also thus not aware that the bolt assembly pin was missing from the particular rifle he was using.[2] These non-apparent dangers fortuitously met in an explosion, blinding Matthews’ right eye and causing him brain damage and other injuries.
The district court specifically found that Matthews’ use of the rifle was not obviously dangerous; that Matthews was able to rotate the bolt handle into what appeared to be the closed position prior to pulling the trigger; and that both he and an ordinary user would have assumed that the rifle was safe to fire at that point. Consequently, in my opinion, the record clearly shows that Matthews carried his initial threshold burden to show that his damages arose from his own use of the rifle to shoot at a target, a use that any objective manufacturer reasonably should have anticipated; and that Matthews, therefore, was entitled to have the district court proceed to adjudicate his unreasonably dangerous product design claim and his unreasonably dangerous failure to warn claim, on their merits, upon the evidence adduced at trial.[3]
*650 The district court did not proceed in that order, however, but instead improperly injected into its “reasonably anticipated use” threshold inquiry an additional anomalous factual issue that should have been considered only in the merits design and warning claims part of the case, or in a subsequent comparative fault inquiry- — viz., whether Matthews’ damages were proximately caused by an unknown previous user’s failure to replace the bolt assembly pin upon reassembly of the rifle. After deciding that the accident happened because some unknown person had left the pin out, rather than because of a defective pin, the court then decreed that Remington was legally entitled to presume that no user of its rifles would ever advertently or inadvertently leave such a pin out. Having established this legal presumption, although there is no warrant in the record or basis in the LPLA or other law for it, the district court rejected Matthews’ claims because “Matthews’ use of the rifle in an out-of-battery condition was not reasonably anticipated.” Matthews v. Remington Arms Co., Inc., No. 07-1392, 2009 WL 2970441, at *4 (W.D.La. Sept. 16, 2009). To reach this conclusion, the district court, in my view, incorrectly interpreted and applied the LPLA’s reasonably anticipated use requirement.
Under the plain language of the Act, a plaintiff asserting a products liability action against a manufacturer has a threshold burden of showing that his damages arose from a reasonably anticipated use of the product. See La.Rev.Stat. § 9:2800.54(D); Kampen v. Am. Isuzu Motors, Inc., 157 F.3d 306, 314 (5th Cir. 1998) (en banc). The LPLA defines a reasonably anticipated use as “a use or handling of the product that the product’s manufacturer should reasonably expect of an ordinary person in the same or similar circumstances.” La.Rev.Stat. § 9:2800.53(7). When the claimant asserts that his damages arose from a reasonably anticipated use of the product by the claimant himself, “in the same or similar circumstances” plainly refers to the same or similar circumstances as the claimant’s use. Id.; see also id. § 9:2800.54(A). This is an “objective inquiry,” requiring a court to ascertain whether the use of the product, from which the plaintiffs damages arose, is a use that a manufacturer such as the defendant should have reasonably expected at the time of manufacture. Kampen, 157 F.3d at 309.
Applying the objective inquiry to the undisputed facts, it is self-evident that Matthews’ damages arose from a use or handling of the rifle that a manufacturer such as Remington should have reasonably expected at the time of the manufacture. Matthews was using the rifle to shoot at a target while sighting in a new telescope on the rifle when his damages arose. This use obviously falls within the core purpose for which Remington designed and made the rifle, viz., to fire a bullet at a target. Moreover, Matthews was found by the district court to have used the rifle as an ordinary user would have under the circumstances; he was not found to be negligent or at fault in his use of the rifle. Thus, Remington, as a rifle manufacturer, reasonably should have anticipated that the rifle would be used just as Matthews did for that purpose.
*651 The LPLA does not require a claimant at the threshold stage to prove that his damages were also proximately caused by a characteristic of the product that renders the product unreasonably dangerous. Nor does it require a claimant at the threshold stage to prove that a third person’s conduct was not a contributing or proximate cause of his damages. Those are additional burdens that a claimant must face only if he satisfies the initial threshold burden of showing that his damages arose from his use of the product that a manufacturer reasonably should have anticipated. Further, those are issues that the district court should have given plenary consideration to as part of a full merits trial inquiry into unsafe design, inadequate warning, and/or comparative fault, and should not have adverted to at the threshold reasonably anticipated-use stage of the case.
The district court, in my view, did not correctly interpret and apply the threshold objective reasonably anticipated use inquiry in the present case. The district court, instead, inquired into whether Remington subjectively expected that some user other than Matthews would have negligently or inadvertently failed to replace the assembly bolt pin during the process of cleaning and reassembling the rifle. This is quite different from the objective inquiry required by the Act, of whether Matthews’ damages arose from a use of the product that the manufacturer reasonably should have anticipated. Moreover, the district court formulated an anomalous rule of law to answer its subjective, rather than objective, inquiry that is foreign to and not authorized by the Act. Thus, the district court held that Remington was entitled— evidently as a matter of law — to expect that no ordinary user would inadvertently leave the bolt assembly pin out when reassembling the rifle after disassembling it for cleaning. Then the court went on to find that Matthews had not presented persuasive evidence that Remington should have anticipated that any user would fail to reinstall the bolt assembly pin. Thus, the court placed another impossible legal burden on Matthews that is not authorized by the LPLA or by any law. How could Matthews ever adduce sufficient evidence to overcome the legal presumption erected by the court that Remington is entitled to presume that no rifle cleaner will ever inadvertently leave out a pin when reassembling a rifle? Specifically, the district court’s rationale was that:
Remington anticipated that a user would disassemble the Model 710 bolt assembly for cleaning and remove the bolt assembly pin, but Mr. and Mrs. Matthews have not presented persuasive evidence that Remington also should have anticipated that users would fail to reinstall the bolt assembly pin. Both lay and expert witnesses testified that an ordinary firearm user knows and understands that reassembly of a firearm with all its parts is critical to safe operation. The Court, therefore, finds that Remington was entitled to expect that an ordinary user would reassemble the rifle with all its parts, absent special circumstances not present in this case.
Matthews, 2009 WL 2970441, at *4 (emphasis added).
Therefore, in my view, the district court committed several clear legal errors in interpreting and applying the LPLA by: (1) failing to recognize that Matthews had carried his threshold burden of showing that his damages arose from his own use of the rifle and that his use was one that a manufacturer reasonably should have anticipated; (2) failing to proceed to consider and decide the merits issues of whether the rifle product was unreasonably dangerous in design or whether an adequate warning about the product’s dangerous characteristic was given; (3) undertaking, at the *652 threshold stage of the case, an anomalous inquiry into whether the accident was proximately caused by a defective pin or by an unknown previous user’s failure to properly replace the pin upon reassembling the rifle; (4) establishing a legal presumption that Remington is entitled to presume that no user of its rifles will ever fail to replace a bolt assembly pin, although it is undisputed that the rifle can give the appearance of operating properly without such a pin; and (5) rejecting Matthews’ claims because he failed to adduce sufficient contrary evidence of Remington’s subjective expectations to overcome this apparently irrebuttable legal presumption.
II.
The majority of this panel not only fails to correct the district court’s erroneous statutory construction and erroneous legal rule-making, but, in an attempt to buttress its own decision, expressly adopts a seriously mistaken interpretation of the LPLA and misapplies this court’s standards of appellate review. I will discuss the majority’s errors in turn.
The majority fails to properly apply the clear and unambiguous provisions of the LPLA as written to the undisputed concrete facts of this case, without further unnecessary judicial interpretation, as required by Louisiana Civil Code article 9. When a claimant’s damage is proximately caused by an unreasonably dangerous characteristic of a product, the LPLA, Louisiana Revised Statute § 9:2800.54(A), mandates that the manufacturer shall be liable to the claimant in two different situations: (1) when such damage arose from a reasonably anticipated use of the product by “the claimant,” id.; and (2) when such damage arose from a reasonably anticipated use of the product by “another person or entity,” id. In this case, Jerry Matthews, “the claimant,” asserts that his injuries arose from his own reasonably anticipated use of the product, a rifle, by using it to attempt to shoot at a target. He does not claim that his damage arose from a use of the rifle by “another person or entity.” Id. Thus, the second type of situation or action provided for by § 9:2800.54(A) does not apply to and is irrelevant to this case.
The majority stretches and distorts the statutory words, “use of the product by ... another person or entity,” to have them apply to the unknown person whom the district court found had left out the missing pin. But the legislature clearly did not intend for them to have that meaning or interpretation. Those words plainly were meant to apply when a claimant’s damage arises from a use of a product by another person or entity: for example, when an innocent bystander is injured by a characteristic of a product such as a lawn mower, automobile or other mechanical device while it is being used by another person or entity in a manner that a manufacturer should reasonably expect of an ordinary person in the same or similar circumstances as the user. The majority’s interpretation and application of the statutory words, “use of the product by ... another person or entity,” differently from the plain, straightforward manner used and intended by the legislature, is therefore unwarranted; to apply those words as the majority does here distorts the “clear and unambiguous” words of the law, which should be applied “as written” to the undisputed concrete facts, without “further interpretation in search of the intent of the legislature.” La. Civ.Code art. 9. Matthews alleged and sought to prove that his damage arose from his own use of the rifle, not from the use of the rifle by another person or entity. Thus, the only reasonably anticipated use question presented is whether the use of the rifle by Matthews, *653 the claimant, was a reasonably anticipated use. This case fits squarely within the plainly relevant LPLA legislated rules, viz., the reasonably anticipated use definition at § 9:2800.53(7) and the claimant’s assertion that his injuries arose from his own use of the rifle, La.Rev.Stat. § 9:2800.54(A); therefore, the majority is not authorized to formulate a new rule to decide the case by resorting to its own judicial conceptions of “equity, ... justice, reason, and prevailing usages.” La. Civ. Code art. 4.
The LPLA defines “reasonably anticipated use” as “a use or handling of a product that the product’s manufacturer should reasonably expect of an ordinary person in the same or similar circumstances.” Id. § 9:2800.53(7). This is the only definition of “reasonably anticipated use” in the LPLA. Accordingly, it must be applied faithfully to the relevant use or handling of a product in each particular case. Because Matthews asserted a claim that his injuries arose from his own use or handling of the Remington rifle, the majority was required by the LPLA to decide whether Matthews’ use of the rifle was one that the manufacturer should reasonably expect of an ordinary person in the same or similar circumstances as Matthews. Had the majority done so, they would have been bound to conclude that Matthews’ use or handling of the rifle was what a manufacturer should expect of an ordinary person in the same or similar circumstances as the claimant. In fact, it is undisputed that Matthews is an ordinary person who had no knowledge of the dangerous characteristic, that the rifle might backfire if its assembly pin had been misplaced or broken. Further, it bears repeating that it is undisputed that Remington did not provide any warning of this danger either in its owner’s manual or on the rifle itself. Moreover, there was nothing in the way Matthews used or handled the rifle that was inconsistent with the use or handling of a product that a manufacturer should reasonably expect of an ordinary person in the same of similar circumstances. As even the district court found: “The Court ... concludes that Mr. Matthews was able to rotate the bolt handle into what appeared to be the closed position prior to pulling the trigger. The Court finds that both he and an ordinary user would have assumed that the rifle was safe to fire at that point, even if the bolt handle had previously been difficult to operate.” Matthews, 2009 WL 2970441, at *4.
As the majority acknowledges, the district court’s conclusions about interpretation of the LPLA are legal conclusions, which are reviewed de novo. Great Am. Ins. Co. v. AFS/IBEX Fin. Seros., Inc., 612 F.3d 800, 809 (5th Cir.2010) (“This court reviews a district court’s interpretation of a state statute de novo.”); see also Murkeldove v. Astrue, 635 F.3d 784, 790 (5th Cir.2011) (“Because the district court’s determination turns on its interpretation of the [relevant statute] and statutory interpretations are conclusions of law, we review the district court’s interpretation de novo.”). Accordingly, a determination of the meaning of “reasonably anticipated use” under the LPLA is a legal conclusion subject to de novo review.
The majority alleges and argues that because someone, unknown to Matthews, removed the bolt-assembly pin from the rifle before Matthews fired it and was injured, Matthews’ use of the rifle should not have been reasonably anticipated by Remington. The majority’s reasoning depends on the premise that the LPLA requires a claimant to prove not only that his use was reasonably anticipated, but also that all prior users’ uses of the product were reasonably anticipated. That interpretation of the clear and unambiguous words of the law is incorrect. If the claim *654 ant asserts that he was the user of the product when he was injured, as Matthews does, the LPLA requires that he prove only that his own personal use was reasonably anticipated in order to fulfill the reasonably anticipated use requirement.[4]
As the majority correctly notes, the issue of whether Matthews’ use of the product was a reasonably anticipated use is merely a threshold requirement; once he meets this requirement, he still has the burden of proving that his injury was proximately caused by an unreasonably dangerous characteristic of the product. La.Rev.Stat. § 9:2800.54(B). In this case, Matthews cannot succeed on the theory that the rifle was unreasonably dangerous in construction or composition, per § 9:2800.55, because the district court found it did not contain such a defect when it left the manufacturer’s control and that finding of fact appears to be supported by the evidence. However, the district court did not reach two other actions or theories of recovery asserted and supported with substantial evidence by Matthews. First, he contends, and introduced substantial evidence to prove, not only that the manufacturer should have reasonably anticipated his use of the rifle, but also that the rifle was unreasonably dangerous in design, per § 9:2800.56, because there was an alternative design available “that was capable of preventing [Matthews’] damage” and that “the likelihood that the [rifle]’s design would cause [Matthews’] damage and the gravity of that damage outweighed the burden on [Remington] of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the [rifle],” id. Second, he contends that Remington provided an inadequate warning, per § 9:2800.57, regarding the possibility of the rifle exploding when the bolt assembly pin was not properly installed, especially where the rifle would give a user no indication that the pin was missing. These two complex “design” and “warning” inquiries are quite distinguishable from the reasonably anticipated use test which is a simpler, more straightforward threshold hurdle. Obviously, the reasonably anticipated use test is not designed to take the place of these more complicated inquiries. The reasonably anticipated use test is designed merely to winnow out claims based on uses that would not be rational or sensible for a manufacturer to expect of a claimant, such as “us[ing] a soft drink bottle for a hammer, ... attempting] to drive [an] automobile across water[,] or ... pour[ing] perfume on a candle to scent it.” John Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L.Rev. 565, 586 & n.110 (1989) (citing as a source of law for the LPLA, the Model Uniform Products Liability Act § 102(G) and comment (G), and listing examples of uses which the “reasonably anticipated use” element is meant to exclude); see also Model Uniform Products Liability Act § 102(G) (defining “[Reasonably anticipated conduct” as “the conduct which would be expected of an ordinary reasonably prudent person who is likely to use the product in the same or similar circumstance”); id. cmt. (G) (“The [Model Uni *655 form Products Liability] Act’s reliance on the concept of ‘reasonably anticipated conduct’ ... helps to ensure that the price of products is not affected by the liability insurance costs that would spring from providing coverage for abnormal product use.” (emphasis added)). In contrast, Matthews’ use of the rifle was certainly one that should have been reasonably anticipated by any objective rifle manufacturer: Matthews simply attempted to fire the rifle at a target.
Moreover, the caselaw confirms that the majority’s interpretation of “reasonably anticipated use” is incorrect. In the cases cited by the majority where the plaintiff’s use was held not to be a reasonably anticipated use, the plaintiffs had personally used the products that injured them in a manner that was held to not be reasonably anticipated. See Broussard v. Procter & Gamble Co., 517 F.3d 767, 769-70 (5th Cir.2008) (plaintiffs use of heatwrap pain relief product in manner contrary to warnings was not a reasonably anticipated use); Kampen, 157 F.3d at 311-12 (5th Cir.1998) (en banc) (plaintiffs use of jack to raise vehicle and crawling under vehicle was not a reasonably anticipated use); Hunter v. Knoll Rig & Equip. Mfg. Co., 70 F.3d 803, 805-10 (5th Cir.1995) (decedent’s stacking of racking pipes against a racking board on an oil derrick so that the pipes leaned toward rather than away from the mast of the derrick, where he was responsible for alerting coworkers of any need to correct the lean, and where industry practice is to not permit such a lean, was not a reasonably anticipated use); Johnson v. Black & Decker U.S., Inc., 701 So.2d 1360, 1364-65 (La.App. 2d Cir.1997) (plaintiffs use of saw, after guard was removed by plaintiff, “either by [plaintiff] himself or with his consent,” was not a reasonably anticipated use); Delphen v. Dep’t of Transp. & Dev., 657 So.2d 328, 333-34 (La.App. 4th Cir. 1995) (plaintiffs borrowing and riding obviously dangerous bicycle across large bridge was not a reasonably anticipated use). By contrast, the majority in this case effectively penalizes Matthews at the threshold of the case for the actions of an unknown third party in removing the bolt-assembly pin from the rifle without Matthews’ knowledge.
Furthermore, even if it could be assumed by some stretch that Matthews was slightly negligent in not checking the rifle’s internal parts before firing the weapon, or in not taking it to the shop after it failed to fire the first shell, his use would still constitute a “reasonably anticipated use,” because no manufacturer should expect this extremely high degree of knowledge or caution from an unwarned ordinary user, where his use of the product is not obviously dangerous. This court, sitting en banc, has made clear that there are circumstances where a plaintiffs use of a product, even if negligent, still constitutes a reasonably anticipated use:
A plaintiffs negligent conduct which does not remove his use of the product from the realm of reasonably anticipated uses may nevertheless contribute to cause his injuries. Such negligence will lessen a plaintiff’s recovery without barring his right to recover altogether. Suppose, for example, that [the plaintiff] had used the jack only to change a tire and the jack had collapsed; the manufacturer had provided no adequate instructions regarding the use of the jack, and the correct manner of use was not obvious; the collapse occurred partly as a result of [the plaintiffs] negligent failure to fit the lifting arm of the jack into a special notch and partly as a result of some unrelated defect in the jack’s composition. In this example, [the plaintiff] used the jack to change a tire, but physically manipulated the jack in an improper manner that was not specifically *656 warned against nor obviously dangerous. We submit that this hypothetical negligent use would be “reasonably anticipated”; the manufacturer would be liable and damages apportioned by comparative fault.
Kampen, 157 F.3d at 316 (second and third emphases added). Matthews’ use of the rifle is like the plaintiffs use of the jack in the above hypothetical example posed by the Kampen en banc majority opinion. Like that hypothetical plaintiff, Matthews used the product at issue for the very purpose that it was intended for. The hypothetical plaintiff used the jack to change a tire, and Matthews used the rifle to shoot at a target. As with the hypothetical jack user, the danger in using the product, the rifle, “was not specifically warned against nor obviously dangerous.” The owner’s manual did not warn of the dangerous possibility of the rifle causing a disastrous uncontained explosion when the bolt-assembly pin was missing. Nor was the danger of firing the rifle obvious, as the district court so found,[5] because Remington had designed the rifle so that the bolt handle would still rotate downwards into what appeared to be the closed and locked position regardless of whether the bolt-assembly pin was inside so that Matthews would not have been able to tell that the bolt-assembly pin was missing. Thus, Matthews’ use of the rifle, like the hypothetical plaintiffs use of the jack in Kampen, was a reasonably anticipated use.
Thus, I respectfully but emphatically disagree with the majority’s unorthodox interpretation of the LPLA, which in effect (1) makes the LPLA’s definition of “reasonably anticipated use” become a useless appendage whenever a third person’s prior use may have affected the product, although the claimant alleges and proves that his damage arose from his own use of the product, which the manufacturer reasonably should have anticipated; (2) distorts the LPLA’s “use of the product by ... another person or entity” proviso (that was intended to expand, not narrow, protections for victims of unsafe products) into an additional manufacturer’s defense not explicitly legislated or intended; (3) creates an additional hurdle and burden for claimants that the legislature did not expressly provide for; and (4) is contrary to this court’s en banc interpretation of the LPLA in Kampen, because it makes the reasonably anticipated use of the product by another person or entity proviso “do the work that comparative fault is intended to do” under Louisiana law. See Kampen, 157 F.3d at 316 (citing, inter alia, Bell v. Jet Wheel Blast, Div. of Ervin Indus., 462 So.2d 166 (La.1985)) (“[Comparative fault” still has a place in “Louisiana products liability law” because “[a] plaintiffs negligent conduct which does not remove his use of the product from the realm of reasonably anticipated uses may nevertheless contribute to cause his injuries. Such negligence will lessen a plaintiffs recovery without barring his right to recover altogether.”); see also Bell, 462 So.2d at 170 (explaining that in a negligence action, “a plaintiffs claim for damages [cannot] be barred totally because of his negligence. *657 At most his claim may be reduced in proportion to his fault.”).
Because Matthews proved that his use of the rifle was not an irrational or unanticipated use, but rather the reasonably anticipated core use of shooting the rifle at a target, he satisfied the reasonably anticipated use requirement, and was entitled to have the district court consider and decide whether he had proven either one of his two actions, viz., that the rifle is unreasonably dangerous in design as provided in § 9:2800.56, or unreasonably dangerous because an adequate warning about the product was not given, as provided in § 9:2800.57. In proving that a characteristic of the product renders it unreasonably dangerous under § 9:2800.56 or § 9:2800.57, Matthews must prove that the characteristic “exist[ed] at the time the product left the control of its manufacturer or result[s] from a reasonably anticipated alteration or modification of the product.” La.Rev.Stat. § 9:2800.54(0). Matthews conceivably may have proved that the rifle’s characteristics were unreasonably dangerous in design or that they required an adequate warning about the danger, and that these dangers existed when the product rifle left its manufacturer’s control. See id. §§ 9:2800.56 and 9:2800.57.
The district court did not consider or decide Matthews’ actions based on §§ 9:2800.56 and 9:2800.57, because it erred as a matter of law by applying the wrong definition of “reasonably anticipated use by the claimant,” and thus incorrectly held that he had not met this requirement. Because the evidence demonstrates clearly that Matthews was free of any fault in his handling and use of the rifle and that he handled and used the rifle in a manner that the manufacturer should reasonably expect of an ordinary person in the same or similar circumstances, the district court’s judgment should be reversed and the case should be remanded to the district court to consider and rule upon Matthews’ actions asserting that the rifle is unreasonably dangerous in design as provided in § 9:2800.56, or that the rifle is unreasonably dangerous because an adequate warning about the product was not provided as required in § 9:2800.57.

. It is undisputed that Remington instructed or warned its factory workers to place a finger under the bolt assembly pin hole to prevent the pin from slipping out and becoming lost when assembling the rifle but that Remington did not communicate this instruction or warning to owners or users of the rifles.

. The district court found that the pin was missing rather than broken or defective. Matthews continues to argue that the accident was caused by a defective pin, but the district court’s ruling that Matthews' use of the rifle was not one that a manufacturer reasonably should anticipate was erroneous as a matter of law, regardless of whether the accident resulted from a missing or a defective bolt assembly pin.

. At trial, it was established that Remington was well aware of the dangerous characteristic of this rifle model, but, nevertheless, distributed 500,000 of them without designing out or warning users of this dangerous characteristic. Remington's witness, Mike Keeney, a staff engineer at Remington, testified that the bolt-assembly pins could be lost, and that Remington had sold 145 additional bolt-assembly pins to stocking dealers, factory service representatives, warranty repair centers, or customers who called Remington directly. Matthews also introduced experts' opinions *650 and other evidence to show that the rifle was unreasonably dangerous in design and that Remington had failed to provide an adequate warning of the rifle’s dangerous characteristic. These issues were vigorously contested by Remington with expert testimony and other evidence. After trial, however, the district court did not rule on either of these issues or theories of recovery but instead inquired into whether a third person’s omission of the bolt assembly pin made the rifle more dangerous than Remington subjectively expected it to be.

. Of course, if a claimant contends that he was injured by another person's or entity's use of the product he must prove that the other's use was- reasonably anticipated. Here, Matthews contends and has clearly shown that his injuries arose from his own use of the rifle to shoot at a target and that that use reasonably should have been anticipated by the manufacturer. He did not contend that he was injured by the use of the product by another person or entity. Remington is not entitled to amend Matthews' pleadings or presentation of his case so as to require him to prove that his injuries arose from a reasonably anticipated use of the rifle by another person or entity.

. Specifically, the district court explained: "The Court concludes that, if Mr. Matthews stated that the 'bolt would not lock,' i.e., he meant that he had difficulty operating the action of the rifle, i.e., difficulty operating the bolt handle. The Court further concludes that Mr. Matthews was able to rotate the bolt handle into what appeared to be the closed position prior to pulling the trigger. The Court finds that both he and an ordinary user would have assumed that the rifle was safe to fire at that point, even if the bolt handle had previously been difficult to operate. Accordingly, the Court does not find that Mr. Matthews' use of the rifle was obviously dangerous.” Matthews, 2009 WL 2970441, at *4.