553 So.2d 1097 (1989)
William D. PELT, Plaintiff-Appellant,
v.
CITY OF DeRIDDER, Defendant-Appellee.
No. 88-870.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1989.
*1098 Kay & Stewart, Herman I Stewart, Jr., DeRidder, La., for plaintiff-appellant.
James K. Nichols, DeRidder, La., for defendant-appellee.
Before DOMENGEAUX, YELVERTON and KING, JJ.
YELVERTON, Judge.
This is an appeal by plaintiff, William Pelt, from a trial court judgment awarding him what he considers inadequate damages for the backup of the sewer system of the City of DeRidder into some of his apartments. Pelt presents five assignments of error, four concerning factual findings by the trial court. The remaining error alleged is the trial court's application of comparative fault to strict liability under La. C.C. art. 667 which we will discuss first. After a thorough review of the record and applicable jurisprudence, we affirm.
On June 8, 1986, DeRidder's sewer system backed up during or immediately following a heavy rain into two apartment buildings owned by Pelt. He sued the City for the resulting damages.
The trial court found the City was strictly liable under La.C.C. art. 667 which provides:
Art. 667. Limitations on use of property
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
The jurisprudence is clear in holding a municipality strictly liable under this article where a property owner incurs damages due to the overflow of sewage into a home or business establishment from a municipally owned and operated sewer system. Romero v. Town of Welsh, 370 So.2d 1286 (La.App. 3d Cir.1979); Falgout v. St. Charles Sewerage District No. 3, 351 So.2d 206 (La.App. 4th Cir.1977) writ denied, 353 So.2d 1047 (La.1978); Carr v. City of Baton Rouge, 314 So.2d 527 (La.App. 1st Cir. 1975), writ denied, 318 So.2d 53 (La.1975); LaCroix v. Travelers Indemnity Company, 333 So.2d 724 (La.App. 2d Cir.1976) writ denied, 338 So.2d 112 (La.1976).
We must determine whether the comparative fault of La.C.C. art. 2323 applies to a strict liability finding under La. C.C. art. 667. Article 2323 provides as follows:
Art. 2323. Computation of damages
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
(emphasis added).
In Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (La.1971), the Supreme Court said that contributory negligence was not available as a defense in strict liability actions. When the issue came up in Dorry v. Lafleur, 399 So.2d 559, 560 (La.1981), the court observed that
[W]here a plaintiff's negligence contributes to his own damage, there is no reason to ignore his fault in every case *1099 simply because the defendant's liability is based on some legal fault other than negligence. Quite to the contrary, the plaintiff's negligence should carry more, not less, consequence when the defendant is strictly liable, but less culpable than the plaintiff.
In dicta, the court stated that there is no policy reason to deny strictly liable defendants the defense of contributory negligence, but its availability as a defense should be determined on a case-by-case basis.
Since Dorry, the Supreme Court has applied the comparative fault principles to the following strict liability cases: Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), (strict products liability); Landry v. State, 495 So.2d 1284 (La. 1986), (strict liability of a custodian for damage caused by things in his custody under La.C.C. art. 2317); Howard v. Allstate Insurance Co., 520 So.2d 715 (La.1988), (animal case under La.C.C. art. 2321); and Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La. 1985), (a motorist-pedestrian case).
The intermediate appellate courts are also allowing comparative fault as a defense in strict liability cases. See LaJaunie v. Metropolitan Property and Liability Insurance Company, 481 So.2d 1357 (La.App. 1st Cir.1985), (a diseased tree under La.C.C. art. 2323); Harper v. State Farm Mutual Automobile Insurance Company, 484 So.2d 737 (La.App. 1st Cir. 1986), writ denied, 489 So.2d 246 (La.1986) (explosion of an automobile battery); and Holmes v. State of Louisiana through Department of Highways, 466 So.2d 811 (La. App. 3d Cir.1985), writ denied 472 So.2d 31 (La.1985), (a highway defect case).
The Supreme Court in Landry v. State, supra, noted that the intermediate courts in the wake of Bell v. Jet Wheel Blast, supra, were allowing comparative fault as a defense in various settings, and that this was proper, when a reduction of a negligent plaintiff's recovery will serve as an incentive for similarly situated plaintiffs to exercise care, while not reducing the incentive of a defendant from removing a risk of harm.
As the trial judge notes in his well reasoned opinion, this is a case in which the reduction of the plaintiff's recovery will give similarly situated plaintiffs a motivation to properly hook into the City's sewer system. In addition, a reduction of plaintiff's recovery will not diminish the City's incentive to remove unreasonable risks. Therefore, in light of the policy considerations enumerated in Bell, we conclude that comparative negligence is applicable in the instant case.
Plaintiff also claims that if comparative negligence principles apply the trial court erred in finding him 65% at fault and reducing his award accordingly. Our duty is to review the record and affirm the trial court's findings of fact unless it is clearly erroneous. Rosell v. Esco, 549 So.2d 840 (La. 1989). A review of the record supports the trial court's findings. The testimony adduced at trial is summarized best by the trial judge, whose language we adopt:
The apartments are constructed in a low-lying area and even before he began construction Mr. Pelt was concerned about the possibility of flooding. He said he consulted a flood zone map before he started the work and satisfied himself that flooding would not occur there, but he admitted many people had told him it would happen. According to the evidence he went ahead with the construction and poured the slabs after only minimal and superficial consideration of the problems presented by the relevant elevations, the slope, and the requirements for a proper and acceptable tie-in into the city main. The service line installed by Mr. Pelt's plumber was laid on the surface of the ground and did not meet the requirements of the city plumbing code. When that line was laid the plumber did not know exactly where the tap-in would have to be made and it turned out because of the elevations and slope the tie-in had to be made on the side of the main instead of from the top as required by the plumbing code.
According to two city employees who made the tap, Mr. Pelt was told by them that the required top tap into the main *1100 could not be made and that a side tap would cause problems. They said Mr. Pelt told them to go ahead and put in the side tap. They suggested that he put in a backup valve on the line to prevent sewage backup and they said Mr. Pelt told them he would talk to his plumber about such a valve. Mr. Pelt frankly admitted in his testimony that the city employees told him he should use a backflow valve, but he did not want to use one and didn't!
When the city employees were asked to tie Mr. Pelt's service line into the city main, they knew that because of the elevations involved, the slope, and the necessity for a side tap, there probably would be backup problems unless a backup valve was used. Under the circumstances they should have refused to make the connection unless and until a backup valve was installed, either by Mr. Pelt or by the City. After making the connection, they reported the unusual situation to Mayor Pugh, but they should have reported it to him or some other appropriate city official before the tie-in was made. The City has the right and the duty to refuse to make a sewer connection for a property owner that does not meed the minimum requirements of the city code. However, if the City chooses to connect the service and a backup occurs, it may be liable unless it has first obtained from the property owner a written express assumption of risk and release from liability.
Appellant complains also about the apportionment of fault by the trial court, 65% to Pelt, 35% to DeRidder. Percentages of fault under La.C.C. 2323 are factual findings not to be disturbed unless manifestly erroneous. We have reviewed these findings in light of the guidelines set forth in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La. 1985). The record supports the allocations of fault made by the trial judge.
Plaintiff also maintains that the trial court erred in concluding the sewage backup was not caused by a defective sewer system and in treating the case as a flooding from rising water rather than as sewage backup caused by the sewer system. The record likewise supports these factual findings of the trial court.
Finally, plaintiff contends that the trial court erred in not allowing loss of rental income from one of the four apartments damaged. The trial court found one apartment was not for rent because plaintiff planned to keep it available for the temporary use of persons for whom he was building homes. This conclusion is supported by the testimony. The trial court did not err in the award for loss of rental income.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by the appellant.
AFFIRMED.