# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-206 consolidated with 20-207, 20-208

**ANTHONY JAMES LANDRY, ET AL.**

**VERSUS**

**GUZZINO COMMERCIAL, LLC, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-2895 C/W 2013-3206, 2013-3564
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED AS AMENDED.**

**Thomas John Gayle**
**Gayle Law Firm**
**713 Kirby Street**
**Lake Charles, LA 70602**
**(337) 494-1220**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Guzzino Commercial, LLC**
 **Industrial Carbon Services, Inc.**
 **Utility Equipment & Truck**
 **Phillip Anthony Guzzino**

**Ralph Edward Kraft**
**Kraft Lege Anseman, LLC**
**600 Jefferson Street, Suite 410**
**Lafayette, LA 70501**
**(337) 706-1818**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Guzzino Commercial, LLC**
 **Utility Equipment & Truck**
 **Industrial Carbon Services, Inc.**

**Christopher E. John**
**City of Lake Charles Legal Department**
**P.O. Box 900**
**Lake Charles, LA 70602-0900**
**(337) 491-1547**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **City of Lake Charles**

**David Laine Morgan**
**Stockwell, Sievert, et al.**
**P.O. Box 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **City of Lake Charles**

**J. Lee Hoffoss, Jr.**
**Claude P. Devall**
**Donald Wayne McKnight**
**Hoffoss Devall, LLC**
**517 West College Street**
**Lake Charles, LA 70605**
**(337) 433-2053**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Anthony James Landry, et al.**

**Charles B. Cappel**
**1011 Lakeshore Drive, Suite 500**
**Lake Charles, LA 60601**
**(337) 491-6996**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**Eula Bartie, et al.**

**GREMILLION, Judge.**

In this "landowner nuisance" case pursued under La.Civ.Code arts. 667 and 668, the defendants, Guzzino Commercial, LLC (GC), Industrial Carbon Services, LLC (ICS), and Utility Equipment and Truck Company (UTEC), appeal the trial court's judgment in favor of plaintiffs Anthony James Landry and Amy Patrice Nevils Landry; Alfred Caesar and Ophelia Caesar; Vickie Brown; Elaine Jason; and James Coley and Novelle Coley, awarding plaintiffs damages for injuries, medical expenses, and property damage for their exposure to petroleum coke by defendants.[1] For the reasons that follow, we affirm as amended.

## FACTS

GC owns warehouse facilities on Industrial Avenue in Lake Charles, Louisiana, that were leased by ICS for the storage and processing of petroleum coke, a manufacturing waste product that is used in the manufacturing of other products, such as steel. The warehouses are located near the Grienwich Terrace neighborhood. Between 2011 and 2013, UTEC was engaged in the packaging and transportation of the coke for ICS. In 2013, ICS took over the processing of the coke until 2015, when that activity ended at the GC warehouses.

The plaintiffs are landowners or tenants in the Grienwich Terrace neighborhood who allege that they have sustained property damage and health effects as a result of coke that had wafted into the neighborhood from the improperly maintained warehouses.

The matter was tried before the bench. The trial court rendered judgment finding GC, UTEC, and ICS were liable in solido for the damages suffered by the

---

[1] This matter was consolidated for trial and appeal with Docket Number 20-207, *Eula Bartie, et al. v. Guzzino Commercial, LLC,* and 20-208, *Wanda Anderson, et al. v. Guzzino Commercial, LLC.* This opinion will address the claims in all three matters.

plaintiffs. In a separate rule to show cause, held before this appeal was perfected, the trial court assessed court costs, including expert witness fees.

Defendants assign six errors that they contend warrant reversal:

1) Manifest error in finding that plaintiffs' medical claims were caused by petroleum coke;

2) Manifest error in finding that the property damage claim of Alfred and Ophelia Caesar was caused by petroleum coke;

3) Legal error in holding defendants liable in solido;

4) Legal error in not assessing each defendant's percentage of fault;

5) Not reducing plaintiffs' quantum for their failure to mitigate their damages; and,

6) Abusing its discretion in awarding expert witness fees.

## ANALYSIS

Louisiana Civil Code Article 667 reads:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

"Proprietor" includes not just the landlord, but also "a person whose rights derive from the owner." *Inabnet v. Exxon Corp.*, 93-681, p. 12 (La. 9/6/94), 642 So.2d 1243, 1251.

*Assignment of error number 1*

Defendants assert that the trial court manifestly erred in awarding damages for medical claims without expert testimony establishing causation. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993) examined the notion that a plaintiff must establish causation of injuries with "reasonable medical certainty." The supreme court determined that this was not an appropriate burden of proof. The court reasoned that "certainty" was too high a standard, equating that degree of proof to "beyond a reasonable doubt." *Id.* at 1005. The court further concluded:

> Second, because the word "medical" is susceptible of being construed as referring only to expert medical testimony, the use of the phrase "reasonable medical certainty" tends to preclude the trier of the facts from considering evidence other than that of expert medical witnesses. While expert medical evidence is sometimes essential, it is self-evident that, as a general rule, whether the defendant's fault, was a cause in fact of a plaintiff's personal injury or damage may be proved by other direct or circumstantial evidence. *Jordan v. Travelers Ins. Co.,* [257 La. 995],245 So.2d [151] at 155 [La.1971]; See Prosser, Torts, § 41, p. 269 (5th ed. 1984) ("Where the conclusion is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn. But on medical matters within common knowledge, no expert testimony is required to permit a conclusion as to causation.") (Footnotes citing authorities omitted.) cf. *Carpenter v. Nelson,* 101 N.W.2d at 922, and authorities cited therein.

*Id.* Thus, a trier of fact can consider causation proven based upon areas that lie within common knowledge.

The judgment awarded Anthony and Amy Landry $2,000.00 each for medical "issues," i.e., general damages. Similarly, the court awarded: Ophelia Caesar, $2,000.00; Vickie Brown, $2,500.00; and Novelle Coley, $1,000.00. Each of these awards represents aggravation of sinus and asthma complaints. The plaintiffs presented the testimony of Dr. Michael Crouch, a toxicologist, who identified eye, ear, nose, throat, and lung irritation as well-recognized problems associated with any particulate matter, not just petroleum coke.

Vickie Brown moved into Grienwich Terrace in February 2012. In June, she began to experience difficulty breathing. This coincided with when she began to notice black dust coating her son's white car. Ms. Brown was admitted to Memorial Hospital and diagnosed with bronchial spasms and asthma. She had never experienced asthma before moving to Grienwich Terrace. As a result of the black dust, Ms. Brown restricted her young son from playing outdoors. The black dust on her ceiling fans and other areas of her home required more of Ms. Brown's attention to keep her house clean.

Anthony Landry and his wife moved into Grienwich Terrace in February 2011. He began to notice the black dust around the property that summer. Mr. Landry had asthma as a youth but had no problems since his pre-teen years. He experienced a recurrence of his asthma, sinus and allergy problems, and eye irritation. Amy Nevils Landry, too, testified to experiencing asthma and sinus and allergy problems. Since she and her husband moved from Grienwich Terrace, those problems have lessened.

Ophelia Caesar did not testify at trial. Her husband, though, testified that his wife began to experience more profound sinus problems than before the coke operations at the warehouse. Those problems have lessened since 2015, when the coke operation ceased.

Novelle Coley was unable to testify at trial because of an unrelated condition that necessitated surgery. Her husband, James, testified that his wife began having asthma problems after the couple noticed the black dust, which they even found in the air conditioning ducts. She started taking asthma medication and has not been able to stop, even after the coke operation ended.

A plaintiff's testimony can establish causation when the alleged injury is one that common knowledge associates with an alleged cause. *Lasha*, 625 So.2d 1002 We find no error in the trial court's conclusion that breathing difficulties and eye

4

irritation were caused by the plaintiffs' exposure to a particulate substance, petroleum coke, from the warehouses.

### *Assignment of error number 2*

Defendants complain that the trial court erred in finding causation on the Caesars' property damage claims. The Caesars were awarded $14,527.69 in property damage. The trial court itemized those damages as: $13,500.00 to replace siding, $598.38 for lawn furniture, and $429.00 to replace their HVAC system motor.

The Caesars' home was sided with cedar. Mr. Caesar testified that the siding was impregnated with coke fines. Despite his efforts, he was unable to wash it off. Some of the fines washed off the roof, but not all of it would. Therefore, the Caesars had the house re-roofed with twenty-six-gauge metal and sided the house with vinyl in March 2017.

The Caesars possessed outdoor furniture. Mr. Caesar testified that he and his wife used the furniture frequently. Mrs. Caesar unsuccessfully tried to scrub the coke fines from their furniture, so they replaced it in March 2014.

In April 2014, the Caesars replaced the condenser fan motor, burned contactor, and capacitor in their air conditioner. Mr. Caesar opined in his testimony that the problems with the HVAC system were caused by the abrasive nature of the coke fines that infiltrated his outdoor unit.

As with medical causation, property damage causation must be proven by a preponderance of the evidence. *Butler v. Baber*, 529 So.2d 374 (La.1988). Either direct or circumstantial evidence may sustain a finding of causation. *Id.*

Defendants assert that there was no evidence that the roof or HVAC were damaged by the presence of coke. Mr. Caesar, however, did testify to these facts. His testimony constitutes evidence. We find no error in the trial court's determination that the roof, siding, and lawn furniture were damaged by coke. One

5

can easily associate a causal relationship through common knowledge between the coke and damage to exposed cedar siding, asphalt roofing, and lawn furniture.

The HVAC system, however, presents a distinct situation. Plaintiffs presented no evidence other than Mr. Caesar to establish a causal relationship between the coke and the damage to the aged condenser and other components of the system. We find that establishing a causal relationship between the coke and the damaged HVAC system falls outside the realm of common knowledge. Air conditioner condensers fail without the presence of particulate matter and are more complex systems about which most people know little. The trial court erred in awarding damages for the HVAC repairs on the evidence presented.

### *Assignments of error numbers 3 and 4*

The defendants complain that the trial court erred in failing to apply the principle of comparative fault to this claim. The plaintiffs counter that defendants are solidary obligors pursuant to La.Civ.Code art. 2324(A), which provides for solidary liability when two or more persons conspire to commit an intentional or willful act.

In *Yokum v. 615 Bourbon St., L.L.C.,* 07-1785 (La. 2/26/08), 977 So.2d 859, our supreme court discussed the nature of liability under La.Civ.Code art. 667 in light of legislative amendments enacted by the legislature in La.Acts 1996, 1st Ex.Sess., No.1, §1. This amendment incorporated a landowner-negligence requirement to impose liability under La.Civ.Code art. 667; it must be proven that the landlord knew or reasonably should have known that the works on his property would cause damage. Thus, liability under Article 667 represents a delict, which mitigates in favor of applying comparative fault. *Yokum*, 977 So.2d 859.

Further, this court has held that comparative fault applies to claims brought pursuant to La.Civ.Code art. 667. In *Pelt v. City of Deridder*, 553 So.2d 1097

(La.App. 3 Cir. 1989), we held that a landowner whose apartment complex received a backwash of sewerage in a flood was properly assessed with 65% comparative negligence by the trial court for constructing the apartments in an area that he had been warned was prone to flooding. We reiterated the *Pelt* holding in *Stanford v. Town of Ball*, 05-38 (La.App. 3 Cir. 6/1/05), 903 So.2d 1235, *writs denied*, 05-1684 (La. 1/9/06), 918 So.2d 1053, 05-1709 (La. 1/9/06), 918 So.2d 1057. Those cases, though, involved comparative fault of the alleged victims rather than an apportionment of fault between obligors.

More recently, however, our colleagues on the fifth circuit undertook an exhaustive analysis of the issue and concluded that comparative fault applies between obligors to obligations arising under La.Civ.Code art. 667. *Kenner Plumbing Supply, Inc. v. Rusich Detailing, Inc.*, 14-922 (La.App. 5 Cir. 9/23/15), 175 So.3d 479, *writs denied*, 15-2110 (La. 2/5/16), 186 So.3d 1164, 15-2112, 15-2115 (La. 2/5/16), 186 So.2d 1165. In light of *Pelt*, *Stanford*, and the fifth circuit's excellent analysis in *Kenner Plumbing Supply*, we conclude that the trial court erred as a matter of law in not assessing the defendants' comparative fault. We therefore amend the judgment to apportion fault as follows: Guzzino Commercial, LLC, 25%; UTEC, 25%; and Industrial Carbon Services, LLC, 50%. Each of these enterprises were aware of the condition of the buildings, the need for appropriate precautions, and the nature of the material with which they were working. UTEC physically transported and packaged the material. It supplied protective equipment for its employees, indicating knowledge of the nature of petroleum coke. UTEC and ICS processed the material for about an equal amount of time, but UTEC did so at ICS's direction. GC, while not engaged in the processing of the coke, was the owner of the building and aware of the nature of petroleum coke and that it was being processed on its premises.

7

*Assignment of error number 5*

Defendants assert that the plaintiffs failed to mitigate their damages. The trial court, they argue, erred in not finding that the plaintiffs failed to mitigate their damages.

ICS sued the City of Lake Charles over an ordinance that would have restricted its activities in the warehouses. The judgment enjoined the city from inhibiting ICS's activities unless it could be demonstrated to the court that petroleum coke was being released from the warehouses. Because the plaintiffs were aware of the injunction and failed to seek redress under its terms, defendants argue, they failed to mitigate their damages.

Defendants' argument holds the plaintiffs responsible for not curtailing defendants' conduct. "The only answer to this argument is, that the ways of the transgressor are hard, and that if a party litigant does not come into courts of justice with clean hands, he has no right to complain of the consequences of his misconduct." *Hebert v. Lacour*, 5 La.Ann. 599, 600 (La.1850). The plaintiffs were not bound by the injunction. Indeed, defendants were aware that the injunction would be dissolved if it were shown that coke was escaping the buildings. It was incumbent upon the defendants to prevent this, not the plaintiffs.

*Assignment of error number 6*

Defendants argue that the trial court erred in awarding the expert witness fees of Dr. Stephen Compton, Mr. Scott Darrah, and Mr. Dewayne Corley. Between these three witnesses, the fees awarded total $63,515.78.[2] Plaintiffs counter that the award of court costs represents a separate judgment that must be appealed separately; therefore, they urge that we dismiss this portion of defendants' appeal for want of

_____

[2] Dr. Compton's fees and deposition charge total $51,266.08; Mr. Darrah's total $6,650.00; and Mr. Corley's $5,599.70.

jurisdiction. We will address plaintiffs' contention first because, were we to determine that we are without jurisdiction over costs, there would be no need to address the merits of defendants' argument.

Louisiana Code of Civil Procedure Article 2088 governs the matters over which a trial court retains jurisdiction after an appeal. It reads, in pertinent part:

> A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
>
> . . . .
>
> (10) Set and tax costs and expert witness fees.

In support of their contention, plaintiffs cite *Harruff v, King*, 15-840 (La.App. 3 Cir. 2/3/16), 185 So.3d 289, *writ denied*, 16-676 (La. 5/27/16), 192 So.3d 745. In *Harruff*, the plaintiffs sought to rescind a sale of immovable property on grounds of lesion beyond moiety. The trial court rescinded the sale, and defendants appealed. During the pendency of the appeal, plaintiffs filed a rule to fix costs. The trial court awarded expert costs to plaintiffs, and defendants did not appeal that ruling. We determined that after an appeal is filed, the trial court's jurisdiction is divested over matters being appealed. Other matters that arise after the appeal is taken do not vest with the court of appeal.

In this case, the judgment on the merits was signed on January 15, 2019. Defendants timely sought new trial, which the trial court denied. Plaintiffs then sought court costs and expert fees through a rule to show cause. The judgment awarding those costs and fees was signed on July 29, 2019. Defendants then sought a suspensive appeal on September 10, 2019.

9

This chronology distinguishes the present matter from *Harruff*. Here, the appeal was not taken until after the judgment was rendered, whereas, in *Harruff* the appeal was taken before costs were assessed. Further, the conclusion that the expert fees award does not constitute a separate judgment that must be appealed apart from the judgment on the merits is supported by the statute governing the award of expert witness fees. Louisiana Revised Statutes 13:3666 provides, in pertinent part (emphasis added):

> A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
>
> B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
>
> (1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
>
> (2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, *which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause*.

This court does have jurisdiction to review the expert fees' award.

The award of expert witness compensation lies within the sound discretion of the trial court and may only be reversed on a showing that the trial court abused that discretion. *Raymond v. Gov't. Employees Ins. Co.*, 09-1327 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, *writ denied*, 10-1569 (La. 10/8/10), 46 So.3d 1268. The factors the trial court should consider are the length of time the expert spent preparing for trial; the time the expert spent at trial; the amount of work and nature of the work the expert performed; the expert's knowledge, accomplishments, and skill; the

complexity of the issues before the court; the helpfulness of the expert to the trier of fact; and awards of compensation to experts in similar cases. *Id.*

Defendants argue that Mr. Darrah inspected each home and estimated based upon assumptions regarding the presence and properties of petroleum coke that were unfounded. Defendants contend that the trial court did not rely upon Mr. Darrah's opinions in its decision.

Plaintiffs counter that neither the trial court's judgment nor its written reasons for judgment indicate the degree to which it relied upon these experts, and we agree. However, the sum awarded for the work of Mr. Darrah is far below the amount plaintiffs were billed, $43,900.00. The trial court denied the plaintiffs any award for Mr. Darrah's investigative work and only awarded the amounts for his actual deposition testimony. Mr. Darrah's deposition was used at trial for purposes of La.R.S. 13:3666. We find no abuse of the trial court's discretion regarding this award.

Similarly, we find no abuse of discretion in the trial court's award regarding Mr. Corley's testimony. However, Mr. Corley, a registered geologist who was tendered and accepted as an expert in sampling and contour mapping, sampled the properties involved in the litigation and prepared a contour map of the concentrations of petroleum coke. While Mr. Corley's testimony was not cited explicitly by the trial court in its reasons for ruling, his map visually reinforced the data that linked the warehouses to the coke found on plaintiff's properties.

Defendants suggest that the trial court did not rely upon Dr. Compton's testimony. We note that the trial court's reasons for judgment specifically mention Dr. Compton and juxtapose it with the testimony of defendants' expert, Mr. Lester McCoy. The trial court clearly gave greater credence to Dr. Compton, whose testimony was corroborated to a greater extent by the physical evidence. We find

no merit to the argument that the trial court did not rely upon Dr. Compton and no abuse of discretion in awarding the expert fees for Dr. Compton's services.

## DECREE

For the reasons assigned, the judgment of the trial court in favor of Alfred and Ophelia Caesar is amended to $14,098.69 in property damages. All other damage awards are affirmed. Fault is assessed to defendants as follows: Guzzino Commercial, LLC, 25%; UTEC, 25%; and Industrial Carbon Services, LLC, 50%. All costs of this appeal are taxed to defendants/ appellants, Guzzino Commercial, LLC, Industrial Carbon Services, LLC, and Utility Equipment and Truck Company.

**AFFIRMED AS AMENDED.**